(627 P.2d 335)
No. 51,487

JAMES M. GRAGG, *Plaintiff-Appellant,* v. UNIFIED SCHOOL DISTRICT No. 287, *Defendant-Appellee.*

Opinion filed May 1, 1981.

*Robert W. Green,* of Robert W. Green, Chartered, of Ottawa, for appellant.
*Richard O. Skoog,* of Skoog & Latimer, of Ottawa, for appellee.

Before FOTH, C.J., presiding, TERRY L. BULLOCK, District Judge, and FREDERICK WOLESLAGEL, District Judge Retired, assigned.

FOTH, C.J.: Plaintiff James Gragg taught and coached football at Williamsburg High School during the 1977-78 and the 1978-79 school years. Presumably unsatisfied with his performance, the school board cut short his career at Williamsburg High by giving him notice of nonrenewal of his teaching contract by letter received by him March 26, 1979. Plaintiff brought this action to enjoin the board from terminating him and for his salary for the 1979-80 school year. He concedes that as an untenured teacher he was not entitled to a statutory hearing on nonrenewal, but contends the notice to him was not timely, and he should have had a hearing on that issue.

His contract for the 1978-79 school year contained two clauses bearing on this appeal. They read:

"Except where terminated as hereinbefore provided, the teacher shall be entitled to a contract for the next succeeding school year unless written notice of intention not to renew this contract is served by the district upon the teacher on or before the 15th day of March, or unless the teacher gives written notice to the district on or before the 15th day of April that the teacher does not desire to enter into a contract for the next succeeding school year.

. . . .

"7. APPLICABILITY OF LAWS, RULES AND REGULATIONS. The provisions of this contract shall be specifically subject to all laws, rules, regulations and orders, *now or hereinafter enacted,* adopted, issued, *altered or amended,* of the United States of America and the State of Kansas." (Emphasis added.)

At the time the parties entered into the contract in June 1978, K.S.A. 72-5411 (Weeks), the "continuing contract" law, provided:

"All contracts of employment of teachers in the public schools in the state, shall continue in full force and effect during good behavior and efficient and competent service rendered by the teacher, and all such contracts of employment shall be deemed to continue for the next succeeding school year unless written notice of intention to terminate the contract be served by the governing body upon any such teacher on or *before the fifteenth day of March or the teacher shall give written notice to the governing body of the school district on or before the fifteenth day of April* that the teacher does not desire continuation of said contract. Terms of a contract may be changed at any time by mutual consent of both the teacher and the governing body of the school district." (Emphasis added.)

Shortly after the parties executed the contract, a legislative amendment effective July 1, 1978, changed the notice deadlines for both school board and teacher to April 15 and May 15 respectively (L. 1978, ch. 292, 1). The trial court granted summary judgment against the plaintiff, finding the board gave timely

notice before the *April 15,* 1979, deadline fixed by the amended statute. Plaintiff has appealed.

The dispositive issue in this case is whether the notice of nonrenewal was given in a timely manner under the terms of the contract and under K.S.A. 72-5411, either as it originally read or as amended.

The trial court found that paragraph 7 of the contract, by specific references to laws "hereinafter enacted . . . altered or amended," incorporated by reference the 1978 amendment to 72-5411, which extended until April 15, 1979, the board's time to serve its notice of nonrenewal. Hence notice in late March was timely.

While we fully agree with the trial court, we would add the following analysis, recognized only in passing in the trial court's memorandum:

School districts, in contracting with teachers, are subject to the cash-basis law. *Patterson v. Montgomery County Comm'rs,* 145 Kan. 559, 66 P.2d 400 (1937). Under K.S.A. 10-1116(*b*), school districts may contract with teachers despite not having on hand the funds to pay next year's salaries, but the total obligations so incurred cannot exceed 100% of the previous fiscal year's expenditures. The effect is to prohibit school districts from hiring teachers for more than one year at a time. Even the professional negotiations act, K.S.A. 72-5413 *et seq.,* recognizes that what is in issue there is the issuance or renewal of *"the annual* teachers' contracts." K.S.A. 72-5423(a). (Emphasis added.)

The continuing contract law and the corresponding provision (K.S.A. 72-5437) of the "due process" act for tenured teachers (K.S.A. 72-5436, *et seq.*) both carve limited exceptions out of this established procedure. Teachers' contracts, while absolutely binding on the board for only one year, may continue and become binding obligations for the succeeding year unless the board gives notice by the date specified. That date was formerly March 15, and is now April 15, under both acts.

Could the district by contract bind itself to give notice by an earlier date? We think not. It could not, for example, hire a teacher in June for the forthcoming year and provide that if notice were not given by August 1—before school even started—the contract would continue for a second year. The result, in such an extreme case, would be the equivalent of a two-year contract. In

our opinion, if the parties are to avail themselves of the option for renewal provisions otherwise prohibited but authorized by the continuing contract law, they must do so in conformity with the statutory scheme.

Two general principles of law seem applicable here:

"A school district is an arm of the state existing only as a creature of the legislature to operate as a political subdivision of the state. A school district has only such power and authority as is granted by the legislature and its power to contract, including contracts for employment, is only such as is conferred either expressly or by necessary implication." (Citations omitted.) *Wichita Public Schools Employees Union v. Smith,* 194 Kan. 2, 4, 397 P.2d 357 (1964).

"One who makes a contract with a municipal corporation is bound to take notice of limitations on its power to contract and also of the power of the particular officer or agency to make the contract. The municipal corporation cannot in any manner bind itself by any contract which is beyond the scope of its powers, and all persons contracting with the corporation are deemed to know its limitations in this respect." *Weil & Associates v. Urban Renewal Agency,* 206 Kan. 405, Syl. ¶ 8, 479 P.2d 875 (1971).

From those principles we conclude that provisions of the applicable contract statute—here K.S.A. 72-5412—control teachers' contracts, and any attempt by a board to contract for terms which would violate the specific statutory terms would be ultra vires and void.

Here, the renewal provision of the contract coincided with the continuing contract law as it read at that time. To that extent, the contractual terms were mere surplusage. When the legislature amended the law, as the parties knew it had the right to do, the amendment applied to this contract and would have done so even in the absence of the "conformity" clause in the contract. The amendment, of course, took effect long before plaintiff's right to a new contract matured. Hence, it did not operate to deprive him of any vested right. The result, as concluded by the trial court, is that the board's notice, given after March 15 but before April 15, as permitted by the amended statute, was effective notice of nonrenewal.

Plaintiff makes two additional arguments. First, he says that despite his nontenured status he had a property right in his contract of which he could not constitutionally be deprived without a hearing. He relies on *Bogart v. Unified Sch. Dist. No. 298 of Lincoln Cty.,* 432 F. Supp. 895 (D. Kan. 1977). That case, however, involved a tenured teacher who was fired in mid-year. Under those circumstances there can be no doubt a teacher is

entitled to a hearing. See *Wertz v. Southern Cloud Unified School District*, 218 Kan. 25, 542 P.2d 339 (1975). Here, we have an untenured teacher and a simple decision not to renew. He may have had expectations, but he had no property right in a renewal; no hearing was required. *Board of Regents v. Roth*, 408 U.S. 564, 33 L.Ed.2d 548, 92 S.Ct. 2701 (1972); *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 605 P.2d 105 (1980).

Second, he argues that the 1978 amendment of the continuing contract law was not intended by the legislature to impair the obligation of previously existing contracts. He cites in support K.S.A. 72-5444, part (§ 9) of the "due process" act of 1974 (L. 1974, ch. 301). That section merely says neither the 1974 act, nor any amendment or repeal of it, was meant to impair the obligation of "any existing contractual right." We are unable to see any applicability of that statute to the continuing contract law or to its 1978 amendment. Of course, the legislature may not at any time impair the obligations of valid existing contracts. It did not do so here; the 1978 amendment of the continuing contract law simply modified an existing statutory procedure for renewal which was written into existing contracts by operation of law. As noted above, plaintiff's right to a new contract had not ripened when the change was made and, because of the change coupled with the board's action, it never did ripen.

Affirmed.